# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 10, 2014 Session Heard at McKenzie[1]

## STATE OF TENNESSEE v. BRODERICK DEVONTE FAYNE

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Tipton County**
**No. 7219     Joe H. Walker, III, Judge**

---

### No. W2012-01488-SC-R11-CD - Filed October 27, 2014

---

The defendant and an accomplice were indicted for aggravated burglary and employment of a firearm during the commission of a dangerous felony.  At the trial of the defendant, the court denied a request by the defense for a special jury instruction on the definition of actual and constructive possession as an element of employment of a firearm.  The jury convicted the defendant on both charges, and the trial court imposed an effective nine-year sentence.  On appeal, the defendant argued that the trial court erred by denying his request for the special jury instruction and by failing to instruct the jury on the crime of possession of a firearm during the commission of a dangerous felony as a lesser included offense.  The Court of Criminal Appeals affirmed the trial court.  We hold that possession of a firearm during the commission of a dangerous felony qualifies as a lesser included offense of employment of a firearm during the commission of a dangerous felony.  In this instance, however, the defendant waived the issue, and he is not entitled to relief under the plain error doctrine.  We further hold that the trial court did not err by refusing the defendant's request for a special instruction on the definition of possession.  Accordingly, the judgment of the Court of Criminal Appeals is affirmed.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed

GARY R. WADE, J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., and JANICE M. HOLDER, CORNELIA A. CLARK, and WILLIAM C. KOCH, JR., JJ., joined.

Gary F. Antrican (on appeal), District Public Defender; and Parker O. Dixon (on appeal and

---

[1] Oral argument was heard on April 10, 2014, at Bethel University in McKenzie, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

at trial) and Melissa Downing (at trial), Assistant District Public Defenders, for the appellant, Broderick Devonte Fayne.

Robert E. Cooper, Jr., Attorney General and Reporter; Gordon W. Smith, Associate Solicitor General; Rachel E. Willis, Senior Counsel; D. Michael Dunavant, District Attorney General; and Billy G. Burk, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts and Procedural History**

On July 14, 2011, two African-American males kicked in the back door of a Covington residence, and one of the two men pointed a gun at fourteen-year-old Kylan Spearmon (the "victim") and forced him to the floor. Within fifteen minutes, the two individuals ran out the back door. The victim then contacted his aunt, Octavia Buck, who called the police.

Sergeant Larry McGarity of the Covington Police Department questioned the victim, who described one of the burglars as wearing a white tank top, a blue bandana across his face, and a hat with "balls hanging from it." Sergeant McGarity discovered a few open drawers in a bedroom but determined that nothing was missing from the Spearmon residence.

Twelve days later, a relative notified Broderick Fayne (the "Defendant") that the Defendant's cousin, Rodnicholas Lewis, had admitted his involvement in the burglary and had implicated the Defendant. Later that day, the Defendant provided a written statement to the police acknowledging his participation in the crime:

> [Lewis] picked me up and told me that we could get some [guns] and[/]or drugs. I agreed to go along with him. We went and parked the car at his aunt['s] house and walked around the house to [Lavondis Boyd's house]. We went to the [victim's] house and entered by kicking in the door and proceeded to rob the house[.] [W]e left the house and ran back to his aunt's house[,] fleeing the scene[.]

The Defendant and Lewis were each indicted for aggravated burglary and employment of a firearm during the commission of a dangerous felony. Later, Lewis pled guilty to aggravated burglary, and the State dismissed the firearm charge in exchange for his testimony in the Defendant's trial.

At trial, the victim testified that on the day of the burglary he heard the doorbell ring and looked out the window but did not answer the door because he did not recognize the individual outside. Some thirty minutes later, however, the victim heard a "bang[] on the

-2-

[back] door real loudly," and two men forced their way into the residence. A "dark skinned, tall"[2] male holding a pistol and wearing a white tank top, bandana, and toboggan loudly ordered the victim to "get down on the floor . . . or [he would] shoot [the victim's] brains out." The victim testified that he saw only a "shadow" of the other burglar as he entered a bedroom. After about fifteen minutes, the victim heard the burglar who had entered the bedroom say, "Let's go," and both burglars ran out the back door.

Lewis testified that he, the Defendant, Lavondis Boyd, and two other individuals were members of a "rap group" called "Trap Money." He stated that they had a disagreement with a rival group, "Long Money," and that Rodney Gude, a member of "Long Money" who was also the victim's cousin, often stayed the night at the victim's residence in Covington, which was "not even [fifteen] steps" from Boyd's residence.

Lewis testified that on the day of the burglary, he drove the Defendant to the Boyd residence, and Boyd persuaded them to "go over there and kick [in] the door." According to Lewis, Boyd first approached the Spearmon residence and rang the doorbell, and when no one answered, the Defendant kicked in the back door and entered the residence. Lewis explained that he stepped inside but immediately "got scared" and "turned around and ran." Lewis denied having a firearm during the burglary; however, he testified that he saw the Defendant "pull[] a gun out of his shorts" prior to entering the residence. Lewis claimed that he said nothing during the course of the burglary.

Sergeant McGarity also testified for the State. He recalled that during the Defendant's interview at the police station, he had claimed that Lewis was the one who used the firearm during the burglary.

Sharon Russell, a cousin to both Lewis and the Defendant, testified that she had overheard the Defendant's statement to Sergeant McGarity. She stated that "[i]t was said that there was a gun," but she claimed that the Defendant had informed Sergeant McGarity that Lewis did not have one.

The Defendant's testimony was consistent with the written statement he provided to the police. He claimed that after he kicked in the door, he entered a room on his left, searched some drawers, and upon failing to find guns or drugs, fled the scene. He denied possessing or using any kind of weapon and further indicated that he was unaware of whether Lewis had used a firearm.

---

[2] The victim, who was approximately five feet, nine inches tall at the time of the burglary, described the gunman as "a lot taller" than him.

At the close of proof, the trial court reviewed the proposed jury instructions with counsel outside the presence of the jury. The trial court informed counsel of its intention to instruct the jury on aggravated burglary as well as the lesser included offenses of criminal trespass of a habitation, criminal trespass, and criminal attempt. As to the second count, the charge for employing a firearm during the commission of a dangerous felony, the following dialogue took place:

| | |
|---|---|
| The Court: | In Count 2, employing a firearm during the commission or attempt to commit aggravated burglary. I don't know of any lesser included. Does the State know of any lesser included? |
| [The State]: | No, sir. |
| The Court: | Does the [D]efendant know of any? |
| [Defense counsel]: | No, Your Honor. |

Defense counsel later submitted a proposed jury instruction for employment of a firearm during the commission of a dangerous felony, which included a definition of the terms "actual possession" and "constructive possession," as set forth in State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). The Defendant asked that the instruction also include the following language: "One's mere presence in an area where an object is discovered, or one's mere association with a person who is in possession of an object, is not alone sufficient to support a finding of constructive possession." (Emphasis omitted) (quoting Shaw, 37 S.W.3d at 903). The State objected, arguing that the Defendant was charged with the employment of a firearm rather than possession of a firearm. The trial court concluded that an instruction on possession was not warranted.

In addition, over the objection of the Defendant, the trial judge included the following instruction on criminal responsibility:

> The defendant is criminally responsible as a party to the offense of . . . employment of a firearm during the commission of aggravated burglary or in attempt thereof, if the offense was committed by the defendant's own conduct, or by the conduct of another for which the defendant is criminally responsible, or by both. Each party to an offense may be charged with the commission of that offense.

-4-

The defendant is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of that offense, or to benefit in the proceeds or results of the offense, the defendant aids, directs, solicits, or attempts to aid another person to commit that offense.

Before you find the defendant guilty of being criminally responsible for said offense committed by the conduct of another, you must find [that] all essential elements of the offense have been proven by the State beyond a reasonable doubt.

During deliberations, the jury returned to the courtroom to ask two questions regarding the charge of employment of a firearm. First, the jury asked, "Does employ mean the [D]efendant was holding the gun?" The trial court responded by repeating the following portion of the pattern instruction for the employment of a firearm offense:

(1) That the defendant employed a firearm. The definition of employ means to make use of.

(2) That the employment was during the commission of or attempt to commit aggravated burglary; and

(3) That the defendant acted either intentionally, knowingly, or recklessly.

Second, the jury asked, "Can [the Defendant] be guilty by association?" In response, the trial court restated the jury instruction for criminal responsibility.

Ultimately, the jury returned a verdict of guilt for both charges. The trial court imposed consecutive sentences of three years for the aggravated burglary and six years for the employment of a firearm, for an effective nine-year sentence. The Court of Criminal Appeals affirmed the Defendant's convictions, rejecting the Defendant's claims that the trial court erred by (1) refusing to instruct the jury on the definition of possession and constructive possession; (2) failing to instruct the jury on possession of a firearm during the commission of a dangerous felony as a lesser included offense of employment of a firearm; (3) allowing Lewis to testify as to a legal opinion regarding the charges against him; (4) providing an instruction on criminal responsibility; and (5) failing to declare a mistrial when the State identified defense counsel as a member of the Public Defender's Office.[3] The Court of

_____

[3] During jury selection for the Defendant's trial, the assistant district attorney general introduced
(continued...)

Criminal Appeals also rejected the Defendant's argument that the evidence was insufficient to support the conviction for employment of a firearm during the commission of a dangerous felony.

This Court granted the Defendant's application for permission to appeal to consider (1) whether the trial court should have instructed the jury on possession of a firearm during the commission of a dangerous felony as a lesser included offense of employment of a firearm during the commission of a dangerous felony; and (2) whether the trial court erred by refusing to instruct the jury on the definition of possession, actual or constructive, for the employment of a firearm charge. In our view, the Court of Criminal Appeals satisfactorily addressed and rejected the Defendant's claims as to the remaining issues. See State v. Fayne, No. W2012-01488-CCA-R3-CD, 2013 WL 8844096, at *4-10 (Tenn. Crim. App. July 2, 2013).

## II. Analysis
### A. Right to Instruction on Possession of a Firearm

The Defendant first argues that the trial court erred by failing to instruct the jury on possession of a firearm during the commission of a dangerous felony as a lesser included offense of employment of a firearm during the commission of a dangerous felony. The State contends that the Defendant waived this issue by failing to submit to the trial court a written request to instruct the jury on the possession of a firearm as a lesser included offense.

We must address the following questions in reviewing the Defendant's claim: (1) whether possession of a firearm during the commission of a dangerous felony is a lesser included offense of employment of a firearm during the commission of a dangerous felony; (2) whether the Defendant has waived his right to raise the issue as an error on appeal; and (3) if the issue has been waived, whether the trial court's failure to instruct on the lesser included offense amounts to plain error.[4] See State v. Page, 184 S.W.3d 223, 227-31 (Tenn. 2006) (conducting plain error review of the trial court's omission of an instruction on

---

[3](...continued)
defense counsel as an attorney "with the public defender's office." Defense counsel moved for a mistrial, claiming that being identified as represented by a public defender prejudiced the Defendant's right to a fair trial. Specifically, defense counsel contended that the comment was "inherently prejudicial" because it made the jury aware that "the [D]efendant [could not] hire counsel[] and [was] in jail." The trial court directed the State to avoid references to the public defender's office but denied the motion for a mistrial.

[4] If a trial court does not instruct on a lesser included offense and the issue is not waived, the reviewing court must additionally determine whether the evidence supported an instruction on the lesser included offense and, if so, whether the omission of the instruction is harmless error. State v. Banks, 271 S.W.3d 90, 124 (Tenn. 2008).

facilitation of second degree murder when the defendant had waived the issue). "Whether a particular instruction regarding a lesser-included offense should have been given is a mixed question of law and fact," which we review de novo with no presumption of correctness. Banks, 271 S.W.3d at 124.

### 1. Possession as a Lesser Included Offense of Employment

In 2009, the General Assembly amended Tennessee Code Annotated section 40-18-110 to include a statutory definition of the term "lesser included offense." See Act of June 9, 2009, ch. 439, § 1, 2009-2 Tenn. Code Ann. Adv. Legis. Serv. 506, 506 (LexisNexis) (codified at Tenn. Code Ann. § 40-18-110(f) (2012)).[5] Section 40-18-110(f)(1)–(4) provides as follows:

---

[5] Ten years earlier, in State v. Burns, 6 S.W.3d 453, 466 (Tenn. 1999), this Court adopted a framework similar to the Model Penal Code for defining lesser included offenses, finding that the approach "[was] logical and consistent with the structure of our own criminal code." Under the Burns test, a crime qualified as a lesser included offense if it satisfied any one of the following three categories:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property or public interest; or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Id. at 466-67. The 2009 amendment codified parts (a) and (c) of the Burns test. Section 40-18-110(f)(1) corresponds to part (a) of the Burns test, and section 40-18-110(f)(2)–(4) corresponds to part (c) of the Burns test. Significantly, the statutory definition set out in section 40-18-110(f) does not include part (b) of the Burns test. Because the resolution of this appeal involves only section 40-18-110(f)(1), which is identical to part (a) of the Burns test, we need not address whether part (b) of the Burns test has been superseded by statute.

An offense is a lesser included offense if:

> (1) All of its statutory elements are included within the statutory elements of the offense charged;
>
> (2) The offense is facilitation of the offense charged or of an offense that otherwise meets the definition of lesser included offense in subdivision (f)(1);
>
> (3) The offense is an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in subdivision (f)(1); or
>
> (4) The offense is solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in subdivision (f)(1).

Consistent with the "statutory elements" approach previously set forth by this Court in Howard v. State, 578 S.W.2d 83, 85 (Tenn. 1979), a lesser included offense exists pursuant to section 40-18-110(f)(1) "'if the elements of the greater offense . . . include, but are not congruent with, all the elements of the lesser.'" Burns, 6 S.W.3d at 464 (quoting Howard, 578 S.W.2d at 85); see also id. at 467 ("Part (a) of this test defines lesser-included offense using a statutory elements approach consistent with Howard."). Therefore, under section 40-18-110(f)(1), the key question is whether "the elements of the lesser offense [are] a subset of the elements of the charged offense." State v. Ely, 48 S.W.3d 710, 718 (Tenn. 2001). Accordingly, in order to determine whether possession of a firearm during the commission of a dangerous felony, as set forth in Tennessee Code Annotated section 39-17-1324(a) (2014), qualifies as a lesser included offense of employment of a firearm during the commission of a dangerous felony, as set forth in section 39-17-1324(b)(1)–(4), we must assess whether the elements of the possession offense fall completely within the elements of the employment offense.

To be guilty of the possession offense, a defendant must "possess a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony." Id. § 39-17-1324(a). When parsed, the offense is comprised of three separate elements: (1) that the defendant possessed a firearm; (2) that the possession was with the "intent to go armed"; and (3) that the first two elements occurred during the commission or attempted commission of a "dangerous felony." The term "dangerous felony" encompasses several enumerated crimes, including aggravated burglary. Id. § 39-17-1324(i)(1)(H).

-8-

Under section 39-17-1324(b)(1)–(4), employment of a firearm occurs when a defendant "employ[s] a firearm" during the commission or attempted commission of a dangerous felony, or during the "[f]light or escape" from the commission or attempted commission of a dangerous felony. Because this definition does not include a mens rea element, Tennessee Code Annotated section 39-11-301(c) (2014) provides that "intent, knowledge[,] or recklessness suffices to establish the culpable mental state." Like possession, then, employment contains three elements: (1) that the defendant employed a firearm; (2) that the employment was during the commission or attempted commission of a dangerous felony, or during the flight or escape from the commission or attempted commission of a dangerous felony; and (3) that the defendant acted intentionally, knowingly, or recklessly.

The three elements of the employment offense encompass all three elements of the possession offense. First, the temporal element of the employment offense subsumes that of the possession offense because, as to both offenses, the relevant conduct may occur during the commission of or attempt to commit a dangerous felony. See id. § 39-17-1324(a), (b)(1)–(2). Second, the mens rea element of section 39-17-1324(a)—that the possession of the firearm was with the "intent to go armed"—is included, by its terms, within the mental states that apply to section 39-17-1324(b) via section 39-11-301(c): intent, knowledge, or recklessness. Intentional employment of a firearm necessarily encompasses the "intent to go armed." Third, the element of "employment" in section 39-17-1324(b) inherently encompasses the requirement of "possession" in section 39-17-1324(a). Because the statute does not provide a definition for "employ," we must apply "the natural and ordinary meaning of the words in the statute to give effect to the legislative intent." State v. Pickett, 211 S.W.3d 696, 705 (Tenn. 2007). The natural and ordinary meaning of the verb "employ" is "to make use of." Black's Law Dictionary 602 (9th ed. 2009); Webster's Third New International Dictionary 743 (1993); 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 36.06(c). "Possession," on the other hand, has a long history as a term of art. In criminal cases, a possession element may generally be established by showing actual or constructive possession. See State v. Robinson, 400 S.W.3d 529, 534 (Tenn. 2013). While actual possession refers to physical control over an item, constructive possession requires only that a defendant have "'the power and intention . . . to exercise dominion and control over'" the item allegedly possessed. Id. (quoting Shaw, 37 S.W.3d at 903). Making use of a firearm—i.e., employment—requires, at a minimum, that one have the power to exercise control over the firearm—i.e., constructive possession. Accordingly, the employment element of section 39-17-1324(b) necessarily encompasses the possession element of section 39-17-1324(a). Because all of the elements of possession of a firearm under section 39-17-1324(a) fall within the elements of employment of a firearm under section 39-17-1324(b), the former qualifies as a lesser included offense of the latter under section 40-18-110(f)(1).

Additional considerations further support our conclusion that possession of a firearm is a lesser included offense of employment of a firearm. The two offenses are set out in subsections of the same statute, Tenn. Code Ann. § 39-17-1324(a)–(b), and the possession offense carries a criminal penalty one step lower than the employment offense. Compare id. § 39-17-1324(g)(1) (providing that possession of a firearm under 39-17-1324(a) is a Class D felony with a mandatory minimum three-year sentence), with id. § 39-17-1324(h)(1) (providing that employment of a firearm under section 39-17-1324(b) is a Class C felony with a mandatory minimum six-year sentence). Finally, both offenses can occur only during the same underlying crimes. See id. § 39-17-1324(i)(1) (enumerating the offenses that qualify as "dangerous felonies"). While these considerations are not dispositive, they bolster our conclusion that possession of a firearm under section 39-17-1324(a) is a lesser included offense of employment of a firearm under section 39-17-1324(b).

## 2. Waiver of Lesser Included Offense Instruction

Although we have determined that possession of a firearm during the commission of a dangerous felony is a lesser included offense of employment of a firearm during the commission of a dangerous felony, that does not necessarily entitle the Defendant to relief. The State contends that the Defendant waived his right to an instruction on any lesser included offenses, including possession of a firearm during the commission of a dangerous felony, because he failed to specifically request an instruction at trial as to any lesser included offenses. We agree.

Tennessee Code Annotated section 40-18-110(c) provides that "[a]bsent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal." (Emphasis added); see also State v. Vasques, 221 S.W.3d 514, 523-24 (Tenn. 2007). The statute further provides that the lesser included offense must be "specifically identified in the request." Tenn. Code Ann. § 40-18-110(a); see also id. § 40-18-110(b). In consequence, "if a defendant fails to request an instruction on a lesser-included offense in writing at trial, the issue will be waived for purposes of plenary appellate review and cannot be cited as error in a motion for a new trial or on appeal." Page, 184 S.W.3d at 229. The prior version of section 40-18-110(a) placed an affirmative duty on trial courts to instruct on all lesser included offenses supported by the evidence, whether requested by the defendant or not. See id. at 228-29 (quoting Tenn. Code Ann. § 40-18-110(a) (1979)). In contrast, the version of the statute currently in effect places on the defendant the burden of requesting an instruction on any lesser included offense. See Tenn. Code Ann. § 40-18-110(a)–(c); see also Page, 184 S.W.3d at 229 ("[A] trial court's incomplete jury charge may be cited as error on appeal only if the defendant requested a lesser-included offense charge at trial." (emphasis added)); State v. Fusco, 404 S.W.3d 504, 515-16 (Tenn. Crim. App. 2012) (finding waiver of a lesser

included offense issue "because the [d]efendant failed to file a written request"), perm. app. denied (Tenn. Apr. 11, 2013).

Here, the Defendant failed to make a written request for a specific instruction on any lesser included offenses as required by Tennessee Code Annotated section 40-18-110(a)–(c). Although the defense requested that the trial court provide an instruction on the definition of the term "possession," that request was aimed at defining possession as an element of employment and failed to identify possession of a firearm during the commission of a dangerous felony as a lesser included offense. See Tenn. Code Ann. § 40-18-110(b) (providing that a request must "specifically identify[] the particular lesser included offense . . . on which a jury instruction is sought"). Moreover, the trial court specifically asked the parties to provide any known lesser included offenses of employment of a firearm during the commission of a dangerous felony, and the defense failed to offer any. The Defendant has not, therefore, properly preserved the issue of whether the trial court erred by failing to instruct possession of a firearm as a lesser included offense.

### 3. Plain Error

The waiver of a lesser included offense instruction does not, however, preclude our consideration of the issue under the doctrine of plain error. Page, 184 S.W.3d at 230; see also Vasques, 221 S.W.3d at 524. Under plain error review, we will grant relief only when all of the following criteria are met:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

Grindstaff v. State, 297 S.W.3d 208, 219 n.12 (Tenn. 2009) (quoting State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000)); see also Tenn. R. App. P. 36(b). Because each factor must be established, we need not consider all five factors when a single factor indicates that relief is not warranted. State v. Bledsoe, 226 S.W.3d 349, 355 (Tenn. 2007) (citing Smith, 24 S.W.3d at 283). "[A]n error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." Page, 184 S.W.3d at 231.

Here, the record fails to establish the breach of a clear and unequivocal rule of law. While a defendant is entitled to a correct and complete charge of the law, id. at 229, this Court has previously held that the omission of an instruction on a lesser included offense does not result in the breach of a clear and unequivocal rule of law when the status of the

crime as a lesser included offense is not apparent based on prior law, see State v. Terry, 118 S.W.3d 355, 360 (Tenn. 2003) (holding that the trial court did not commit plain error when it was not previously clear "whether attempted aggravated criminal trespass was a lesser-included offense of attempted aggravated burglary").[6]  In this instance, possession of a firearm during the commission of a dangerous felony has not previously been recognized as a lesser included offense of employment of a firearm during the commission of a dangerous felony.  Moreover, while our application of Tennessee Code Annotated section 40-18-110(f)(1) establishes that possession of a firearm qualifies as a lesser included offense, that conclusion was not so readily apparent based on prior case law as to give rise to a clear and unequivocal rule of law.  As a result, the omission of an instruction on possession of a firearm did not amount to the breach of a clear and unequivocal rule of law and does not support a finding of plain error.

### B. Adequacy of the Jury Instructions

The final issue we address is whether the trial court erred by refusing to instruct the jury on the definition of the term "possession" as an element of employment of a firearm during the commission of a dangerous felony.  The trial court instructed the jury using the pattern jury instructions for employment of a firearm during the commission or attempted commission of a dangerous felony.  7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 36.06(c).  The Defendant contends that the trial court should have supplemented its instructions with a definition of actual and constructive possession.  While we agree that it is not possible to employ a firearm without concomitantly possessing it, we hold that the trial court did not err by denying the special instruction because the instruction, as provided, fully and fairly set forth the applicable law.

The United States Constitution and Tennessee Constitution guarantee a right to trial by jury.  U.S. Const. amend. VI; Tenn. Const. art. I, § 6 (providing "[t]hat the right of trial by jury shall remain inviolate").  This right encompasses an entitlement to "a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions."  State v. Dorantes, 331 S.W.3d 370, 390 (Tenn. 2011).  In consequence, the trial court has the duty to give a comprehensive instruction of the law as applicable to the facts in each case, State v. Thompson, 519 S.W.2d 789, 792 (Tenn. 1975), including a definition of the elements of each offense, see State v. Ducker, 27 S.W.3d

---

[6] In Terry, this Court focused on whether the lesser included offense had been recognized as such "at the time of trial."  Id. at 360.  Later, the United States Supreme Court, construing the federal plain error rule, Fed. R. Crim. P. 52(b), held that plain error may be established when a trial court rules on an unsettled question of law and an intervening decision by a different court settles the question prior to appeal.  Henderson v. United States, 133 S. Ct. 1121, 1129-30 (2013).  In this instance, the parties have not briefed or relied upon Henderson.  Accordingly, we leave for a future case the question of whether the ruling in Henderson applies under Tennessee law.

889, 899 (Tenn. 2000); State v. Cravens, 764 S.W.2d 754, 756 (Tenn. 1989). When the general charge fully and fairly sets forth the applicable law, a special instruction is unnecessary. See State v. Hanson, 279 S.W.3d 265, 280 (Tenn. 2009) (emphasizing the importance of assessing the adequacy of the instructions as a whole rather than in isolation). Instead, "[t]he purpose of a special instruction is 'to supply an omission or correct a mistake made in the general charge, to present a material question not treated in the general charge, or to limit, extend, eliminate, or more accurately define a proposition already submitted to the jury.'" State v. Adams, 405 S.W.3d 641, 661 (Tenn. 2013) (quoting State v. Cozart, 54 S.W.3d 242, 245 (Tenn. 2001), overruled on other grounds by State v. White, 362 S.W.3d 559 (Tenn. 2012)). As a result, the refusal to provide special instructions will be deemed error only if the charged instruction "fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." See State v. Vann, 976 S.W.2d 93, 101 (Tenn. 1998) (citing State v. Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995); Graham v. State, 547 S.W.2d 531 (Tenn. 1977)); see also Shell v. State, 584 S.W.2d 231, 235 (Tenn. Crim. App. 1979) (declining to find error when the charged instruction provided a correct statement of Tennessee law albeit in less precise terms than the requested instruction). The propriety of a jury instruction is a mixed question of law and fact, reviewed de novo with no presumption of correctness. State v. Rush, 50 S.W.3d 424, 427 (Tenn. 2001); State v. Smiley, 38 S.W.3d 521, 524 (Tenn. 2001).

In this instance, the second count of the indictment charged the Defendant with "unlawfully employ[ing] a firearm during the commission of or the attempt to commit a dangerous felony, to wit: aggravated burglary, in violation of [Tennessee Code Annotated section] 39-17-1324[(b)]." At the close of proof, the trial court instructed the jury in pertinent part as follows:

Any person who employs a firearm during the commission [of] or attempt to commit aggravated burglary is guilty of a crime. For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements:

1. That the defendant employed a firearm; and

2. That the employment was during the commission of or attempt to commit aggravated burglary; and

3. That the defendant acted either intentionally, knowingly, or recklessly.

You've already been charged with the elements of the offense of

-13-

aggravated burglary and attempt.

> Employ means to make use of.

> Firearm means any weapon designed, made, or adapted to expel a projectile by the action of an explosive or any device readily convertible to that use.

> Aggravated burglary is a dangerous felony.

> I've already given you the definitions of intentionally, knowingly, and recklessly.

(Emphasis added.)

The language of the pattern jury instruction tracks the statutory language of the offense, including all essential elements. Further, the instruction sets forth the applicable statutory definitions of these elements. Because our criminal code does not define "employment," the pattern instruction defined the term "employ" to mean "to make use of," based on the definition provided in Black's Law Dictionary. 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 36.06(c) & n.5. The Defendant, however, submits that this definition was insufficient because employment of a firearm necessarily involves possession of a firearm, which should be defined to include actual and constructive possession. See Robinson, 400 S.W.3d at 534 (noting that possession can be actual or constructive, the latter of which requires that a defendant have "'the power and intention . . . to exercise dominion and control over'" the item allegedly possessed (quoting Shaw, 37 S.W.3d at 903)).

As indicated, we agree with the Defendant that employment of a firearm necessarily encompasses possession of a firearm, either in the actual or constructive sense. Nevertheless, the Defendant has failed to establish that the definition of employment provided—"to make use of"—misled the jury as to the applicable law. Because the phrase "to make use of" is of common parlance and is understood by persons of reasonable intelligence, the court was not required to give a special instruction delineating its meaning. See State v. Black, 745 S.W.2d 302, 306 (Tenn. Crim. App. 1987) ("Where words and terms are in common use and are such as can be understood by persons of ordinary intelligence, it is not necessary in the absence of anything in the charge to obscure their meaning, for the court to define or explain them."). Although the jury asked the trial court questions regarding the definition of "employment" and the possibility of "guilt[] by association," it is our view that the instruction given by the trial court defining "employment," combined with the instruction on criminal responsibility, fairly submitted the legal issues to the jury. See Vann, 976 S.W.2d at 101. As a result, the

Defendant has failed to establish that the trial court erred by failing to give a special instruction defining "possession."

### III. Conclusion

Possession of a firearm during the commission of a dangerous felony qualifies as a lesser included offense of employment of a firearm during the commission of a dangerous felony. Nevertheless, the Defendant has waived the issue, and, under these circumstances, is not entitled to relief under the plain error doctrine. Moreover, the trial court did not err by failing to give the special instruction on possession as requested by the Defendant. As to all other issues presented by the Defendant that are not specifically addressed in this opinion, we uphold the ruling of the Court of Criminal Appeals. The judgment of the Court of Criminal Appeals is, therefore, affirmed. It appearing that the Defendant is indigent, costs of this appeal are taxed to the State of Tennessee.

_____
GARY R. WADE, JUSTICE